## WILLIAM F. LIBBY *vs.* CITY OF PORTLAND.

## Cumberland. ˙ Opinion May 17, 1909.

*Municipal Corporations. Same may Own Real Estate Disconnected from Public Use. Same Liable for Negligence in Management of Such Real Estate. Private and Special Laws, 1832, chapter 248, section 4 ; 1863, chapter 275, section 7. Revised Statutes, chapter 1, section 1 ; chapter 4, sections 1, 80, 81, 82-85.*

In the absence of any special rights conferred or liabilities imposed by legislative charter, towns and cities act in a dual capacity, the one corporate, the other governmental. To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts and the right to sue and be sued ; to the latter belong the discharge of duties imposed upon them by the legislature for the public benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes.

A municipality as proprietor is not to be confounded with the municipality as a legislator or custodian of the public welfare. If a building is maintained solely for a public purpose no liability on the part of the municipality arises for accidents in connection therewith.

In an action on the case against a municipal corporation to recover damages for personal injuries sustained by reason of the alleged defective conditions of a basement step of a building owned by the defendant municipal corporation, the writ contained two counts, the first count alleging in substance that the defendant municipal corporation was the lawful owner and in lawful possession, control and management of a certain farm with the buildings thereon which it was operating in the usual method of husbandry and that " all said buildings, land and other property were then and there used by the said defendant for its own emolument profit and advantage," but it nowhere alleged or even intimated that the farm was a poor farm and that the building where the injury was received, was a city almshouse. The second count alleged that the defendant municipal corporation was the owner of an almshouse, in the maintenance of which negligence was charged. The defendant filed a general demurrer to each count. The ground of the demurrer to the first count was that the negligence alleged therein appeared to have resulted from the performance of ultra vires acts and that a municipal corporation cannot be held liable for the performance of such acts.

*Held:* That while a municipal corporation cannot raise money by taxation for the purchase of a farm for other than municipal purposes, yet it may lawfully own, control and manage such farm and the buildings thereon, disconnected from any public use, and for its own emolument, profit and advantage, and in the absence of prohibiting statutes it may receive and hold in its corporate capacity, gifts of either real or personal estate.

2. That a municipal corporation holding property for its profit or gain is liable for negligence in the management thereof to the same extent that business corporations or individuals would be.

3. That as the demurrer to the first count admitted as true the facts therein alleged, and as the facts therein alleged were sufficient, if true, to constitute a cause of action, the first count in the writ was good.

On exceptions by defendant. Overruled.

Action on the case to recover damages for personal injuries alleged to have been sustained by reason of the alleged defective condition of the basement step of a building belonging to the defendant city. The writ contained two counts, and on the first day of the return term the defendant filed a general demurrer to each count. The demurrers were overruled and the defendant excepted.

The case is stated in the opinion.

*William Lyons*, for plaintiff.

*John T. Fagan, and Clarence W. Peabody*, for defendant.

SITTING: WHITEHOUSE, SAVAGE, CORNISH, KING, BIRD, JJ.

CORNISH, J. Action on the case for personal injuries alleged to have been sustained by the plaintiff by reason of the defective condition of the basement step of a building belonging to the defendant. The writ contains two counts. A general demurrer was filed to each count. The presiding Justice overruled both demurrers and the defendant alleged exceptions. If either count sets forth a cause of action, the exceptions must be overruled.

The first count alleges in substance that the defendant was the lawful owner and in the lawful possession, control and management of a certain farm with the buildings thereon which it was operating in the usual method of husbandry and that "all of said buildings, land and other property were then and there used by the said defendant for its own emolument profit and advantage." It nowhere

alleges or even intimates that this was a poor farm and that the building, where the injury was received, was a city almshouse. The second count is based squarely on the allegation of an almshouse, in the maintenance of which negligence is charged. It is necessary to consider the allegations of the first count alone, the objection to which on the part of the defendant is that the alleged negligence appears to have resulted from the performance of ultra vires acts by the city and that the city cannot be held liable in the performance of such acts. This leads us to a brief consideration of the rights, powers, duties and liabilities of municipal corporations in this State.

In the absence of any special rights conferred or liabilities imposed by legislative charter, towns and cities act in a dual capacity, the one corporate, the other governmental. To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts and the right to sue and be sued ; to the latter belongs the discharge of duties imposed upon them by the Legislature for the public benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes. This distinction is sharply defined in a long line of decisions of which it is necessary to cite only the following : *Eastman* v. *Meredith*, 36 N. H. 284 ; *Oliver* v. *Worcester*, 102 Mass. 489 ; *Small* v. *Danville*, 51 Maine, 359 ; *Bryant* v. *Westbrook*, 86 Maine, 450. The Revised Statutes, recognize this two fold character, ch. 4. sec. 1, making the inhabitants of each town a body corporate, and ch. 1, sec. 1, making towns a subdivision of the State.

The precise question is whether the city of Portland acting in its corporate capacity could lawfully own, control and manage a farm house within its limits, disconnected from any public use, and for its own emolument, profit and advantage.

1.   It may be conceded that a city or town would not have the right to raise money by taxation for the purchase of such a farm any more than for the establishment of manufacturies, *Opinion of Justices*, 58 Maine, 590, or for the erection of buildings for the purpose of renting them as stores, or banks or halls.   *French* v. *Quincy*, 3 Allen, 9.

But it does not follow that a city or town might not be the lawful and legal owner of a farm or of a block of rentable buildings and might not as such owner maintain the same for its pecuniary advantage.

Suppose, by way of illustration, that the municipal officers of a town bid in, in behalf of the town, real estate sold for non-payment of taxes, as they are authorized to do by R. S., c. 10, sec. 85.   It is clearly the purpose of the statute that the title shall vest in the town, if the statutory proceedings have been complied with and the property is not redeemed by the owner.   Such vesting of title confers upon the town all the ordinary incidents of lawful ownership among which is the right to use and utilize.   Must the town, although the lawful owner, yet because it is a town, let the property, if land, lie fallow, or if buildings, remain vacant and unrented?   Such a hollow result cannot be the purpose of the statute.

Suppose again that some benefactor should convey by deed, or devise by will, such real estate to the town as a gift, would not the title vest and would not the town be authorized to manage and maintain the property for profit until some other disposition of it might be deemed advisable?   Gifts of real estate should stand on no different basis than gifts of money, and certainly the treasury would be lawfully enriched by such benefactions, in either form.

The authorities so hold.   Dillon on Municipal Corp., Vol. 2, sec. 566, states the principle thus:   "Municipal and public corporations may be the objects of public and private bounty.   This is reasonable and just.   They are in law, clothed with the power of individuality.   They are placed by law under various obligations and duties.   Burdens of a peculiar character rest upon compact populations residing within restricted and narrow limits, to meet which, property and revenues are absolutely necessary, and, there-

fore, legacies of personal property, devises of real property, and grants or gifts of either species of property directly to the corporation for its own use and benefit, intended to and which have the effect to ease it of its obligations or lighten the burdens of its citizens, are, in the absence of disabling or restraining statutes, valid in law."

There is no such disabling statute in this State, but on the contrary cities and towns are expressly authorized to receive and carry out the terms of conditional gifts, R. S., c. 4, sec. 80 and 81, and of trust funds, R. S., c. 4, sec. 82-85. The necessity of express action on the part of the municipality in fulfilling the conditions of such gifts and trusts rendered necessary the passage of an enabling statute. But in the absence of any prohibiting statute, such municipality in its corporate capacity may receive and hold gifts of either real or personal estate. 2 Abbott Mun. Corp., sec. 720, while questioning the doctrine as an academic proposition admits it to be the law of the decisions.

*Worcester* v. *Eaton*, 13 Mass. 371, was a real action based upon a deed of real estate to the town in consideration that the grantor should be supported during her natural life, and the point was raised in defense that the town could not take the premises as grantee. In overruling this defense the court say : "With respect to the capacity of the demandants to take by purchase and to hold real estate, we cannot deny to towns such right, since by the immemorial usage of the country, it appears to have been an incident to their corporate powers. As early as the year 1679, provision was made by a colonial act respecting lands, woods, &c. owned by towns in their corporate capacity ; and authority was given to the inhabitants, by vote of the major part, to dispose of the same by grant of lots for settlement, and it is well known that many towns, at this day, are owners of real estate, which they hold in their corporate capacity, other than such as may be necessary to erect school-houses and other public buildings upon. Whether the inhabitants of a town can be assessed, to raise money for the purchase of lands, to be used for any other purpose than the execution

of some lawful requisition, is a different question.  But there seems to be no reason why there may not be a gift or a devise to the inhabitants."

This case has been cited with approval in *Oliver* v. *Worcester*, 102 Mass. 489, and *Commonwealth* v. *Wilder*, 127 Mass. 1, the court affirming in the last case that "there is no provision in the statute forbidding towns to hold real estate for any particular purposes."

*New Shoreham* v. *Ball*, 14 R. I. 566, was an action of ejectment, the plaintiff town in proof of title adducing evidence of possession for more than twenty years.  The defendant contended that the town could not acquire title by possession for any other than municipal purposes, but the court speaking through Chief Justice Durfee held otherwise in these words :    "The cases cited in support of the exceptions do not go to the point that a town cannot acquire land by possession for other than municipal purposes, but only to the point that it is ultra vires for a town to purchase land for other than such purposes.  We think this is quite a different proposition ; for a town cannot purchase land without expending its moneys, and it has no right to expend its moneys, raised by taxation or otherwise for municipal purposes, for other purposes.  The acquirement of land by possession does not involve an expenditure any more than does the acquirement of land by deed of gift or by devise ; and it has been decided that a gift or devise of land to a town is good, even though the land be given or devised in general terms, and be accepted without any intent to use it directly for municipal purposes.  .  .  .  Land so given, even when not wanted for municipal purposes, may be applied by sale or lease to the alleviation of municipal burdens."

This same principle has been recognized frequently in the decisions of this court.  *Marston* v. *Scarborough*, 71 Maine, 267 ; *Camden* v. *Village Corporation*, 77 Maine, 530-535; *Bulger* v. *Eden*, 82 Maine, 352 ; *Keeley* v. *Portland*, 100 Maine, 260-265.

Moreover the charter of the City of Portland expressly provides that the city council "shall have the care and superintendence of city buildings and the custody and management of all city property

with power to let or sell what may be legally let or sold; and to purchase and take, in the name of the city, such real or personal property . . . as they may think useful to the public interest. Sec. 4, chap. 248 of Spec. L. 1832, sec. 7, ch. 275, Sp. Laws, 1863. The "custody and management of all city property" must include all to which the city has title, and not simply what is taken or purchased for municipal purposes.

2. From this proposition of lawful ownership follows another that is equally well settled viz. That a city or town holding property for its. own profit or gain is liable for negligence in its management to the same extent that business corporations or individuals would be.

"When this legal condition exists, the public corporation may by the exercise of an express or an assumed power, acquire property in this capacity and where this is done it will be treated as a private corporation and subject to all the rules of law, regulating rights and liabilities as devolving upon a private individual . . . . Its rights and its liabilities are measured strictly by the laws which determine all private rights and liabilities." 2 Abb. Mun. Corp., sec. 720.

*Woodward* v. *Boston,* 115 Mass. 81, was an action of tort brought to recover damages for the alleged conversion of a building that had been sold at auction by the city to the plaintiff. The court say: "In the sale of this building the city acted, in its capacity as a proprietor in the management of property held for its profit and advantage as a corporation, and as to it, has·substantially the same rights and liabilities as a private individual." See also *Oliver* v. *Worcester,* 102 Mass. 489-500 ; *Hill* v. *Boston,* 122 Mass. 344-359 ; *Haley* v. *Boston,* 191 Mass. 291-292 ; *Savannah* v. *Cullins,* 38 Ga. 334.

The decision in *Moulton* v. *Scarborough,* 71 Maine, 267, must rest squarely on this principle. That case came to this court on demurrer to the declaration in which the plaintiff alleged that the defendant town was guilty of negligence in the management of a certain ram owned and controlled by it. Like the case at bar the declaration was barren of any allegation or intimation that the

property was used in connection with the farm maintained by the town for the support of the poor. Counsel for defendant in that case sharply contended that "a town cannot own property, except when necessary to aid in the performance of duties imposed on it by law. For a town to be ' owner and possessor of a ram ' otherwise than in the line of its statutory duties, is ultra vires." The language of the court in answer to this contention is this : "It is not claimed in support of the demurrer that the declaration is defective ; but it is contended in behalf of the defendants, that the town had no legal authority to own and keep a ram ; that the act was ultra vires, and that, therefore, the town is not liable. "It is admitted, however, by the defendants' counsel, that if the town could legally own and keep the ram for any corporate purpose, for profit and gain, then it rests under the same liability as a person or private corporation for its proper care and control. This is the well settled rule of law."

The opinion then discusses the right of a town to maintain a farm for the support of the poor and to stock it for ordinary farm purposes, and holds the declaration good. Later cases have cited this decision with approval. *Bulger* v. *Eden*, 82 Maine, 352 ; *Sibley* v. *Lumbering Assoc.*, 93 Maine, 399-402 ; *Keeley* v. *Portland*, 100 Maine, 260-265. In this last case after considering the non-liability of a municipal corporation to a private action for neglect to perform, or negligent performance of, corporate duties imposed upon it by the legislature, unless such liability to action has been given by statute, the court adds : "It is true there are limitations to this rule, or conditions to which it is not applicable, the most important perhaps of which is this : A municipal corporation lawfully owning and controlling property not in the performance of a public duty enforced upon it by law, but wholly or partially for its own profit or gain, is liable for negligence in the management of such property to the same extent as business corporations or individuals must be."

The municipality as proprietor is not to be confounded with the municipality as legislator or custodian for the public welfare. If a building is maintained solely for a public purpose no liability on

the part of the city arises for accidents in connection therewith; excavation in school house yard, *Bigelow* v. *Randolph*, 14 Gray, 541; unsafe stairway in school building, *Hall* v. *Boston*, 122 Mass. 344; defective heating apparatus in school building, *Wixon* v. *Newport*, 13 R. I. 454; unsafe floor in town house, *Eastman* v. *Meredith*, 36 N. H. 284. But when property is used or business is conducted by a city principally for public purposes under the authority of law, but incidentally and in part for profit, the city is liable for negligence in management. Thus, for injury sustained in falling through a trap door in a hall let for hire, in a city building, *Worden* v. *New Bedford*, 131 Mass. 23; or because of insufficient lighting of the approaches to such hall, *Little* v. *Holyoke*, 177 Mass. 114; where the town engaged in crushing stone and repairing road for a street railway company, *Collins* v. *Greenfield*, 172 Mass. 78; where the town used a stone quarry in part for the public streets and in part for the sale of stone, *Duggan* v. *Peabody*, 187 Mass. 349. The liability in the cases last cited is created when public use gives way to use for private gain. *Larrabee* v. *Peabody*, 128 Mass. 561. If then a city is liable for accidents in a part of a public building used for private gain it must certainly be liable when the entire building is so used. And the same rule would apply to any other property lawfully held and maintained for private gain whether it be a hall, a business block or a farm house.

The cases cited by the defendant do not reach the point under consideration. They involved acts clearly ultra vires, as the construction of an embankment across two channels of a stream in *Anthony* v. *Adams*, 1 Met. 284; the digging of a ditch across the land of a private individual in *Seele* v. *Deering*, 79 Maine, 343; and the maintenance of a public ferry in *Hoggard* v. *Monroe*, 51 La Ann. 683, 44 L. R. A. 477.

Our conclusion therefore is that since the City of Portland may be "the lawful owner and in the lawful possession, control and management" of the property in question and may be liable for negligence in connection with the maintenance thereof for its "own emolument, profit or advantage" and since these facts duly alleged

in the declaration are admitted to be true by the demurrer, the first count sets forth a cause of action and the demurrer thereto was properly overruled.

*Exceptions overruled.*