MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 35
Docket:      BCD-15-623
Argued:      September 14, 2016
Decided:     March 2, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

CLAIRE DEAN PERRY et al.

v.

WILLIAM T. DEAN JR. et al.

HUMPHREY, J.

[¶1]  The Department of Health and Human Services appeals from an order entered in the Business and Consumer Docket (*Horton, J.*) denying its motions for summary judgment.  The Department argues that the court erred in holding that the Maine Probate Code contains an express waiver of sovereign immunity from tort claims and thus the Department may be liable for a breach of fiduciary duty when acting as a public conservator.  Because the Probate Code does not expressly waive sovereign immunity and the record reflects that the Department did not waive immunity by obtaining liability insurance, we conclude that the Department is immune from the breach of fiduciary duty claims and accordingly vacate the order and remand for the entry of a judgment in the Department's favor.

## I. BACKGROUND

[¶2]   The following facts are undisputed unless otherwise noted. *See Deschenes v. City of Sanford*, 2016 ME 56, ¶ 3, 137 A.3d 198.

[¶3]   In May 2012, William T. Dean Jr. was involuntarily hospitalized and later transferred to a psychiatric facility where he remained until June 2013.   After a Department investigation discovered that Dean owned properties in Owls Head and Rockland that were facing tax foreclosure, the Department filed a petition for a temporary public conservatorship in the Probate Court (Penobscot County) on September 5, 2012.   *See* 18-A M.R.S. § 5-408-A (2016).   The court (*Woodcock, J.*) granted the petition on September 6, 2012, appointing the Department as Dean's temporary public conservator with the power to manage and control his assets for six months.

[¶4]   On May 10, 2013, after the Department sold the Owls Head property purportedly to pay the outstanding taxes, Dean's sister, Claire Dean Perry, filed a complaint in the Superior Court (Knox County) against Dean, the trustee of a family trust,[1] the Department, and individuals who acted on behalf

---

[1]  Dean and Perry are beneficiaries of a trust established by their late mother, Alice H. Dean, of which Key Trust Company of Maine is trustee.  In Perry's complaint, she alleged that the trustee allowed Dean to wrongfully withdraw funds from the trust and that Dean "confessed" to the withdrawals, promised to repay Perry $120,000 in full when he sold his Owls Head property, and agreed that Perry could reside at the property until he repaid that sum.

of the Department.[2]  Perry alleged that she was residing at the Owls Head property pursuant to an agreement with Dean and asserted several claims arising out of the Department's management of Dean's property during the public conservatorship.  The case was thereafter transferred to the Business and Consumer Docket.

[¶5]  Pamela Vose, who is Dean's cousin, was appointed as his conservator on August 1, 2013, after the Department's temporary public conservatorship had expired.  Vose, on behalf of Dean, answered Perry's complaint and asserted various cross-claims against the Department and the individual state defendants, including a claim against the Department for breach of fiduciary duty.  Vose alleged that the Department sold the Owls Head property for forty percent of the tax-assessed value, damaged Dean's real and personal property by allowing the Rockland property's water pipes to burst, euthanized Dean's cat, sold Dean's Cadillac for less than market value, and generally mismanaged Dean's property.

[¶6]  Vose then filed a separate action against the purchaser of the Owls Head property and other parties, and later amended her complaint to join the

---

[2]  These individuals included David A. Vaughan, Janice Archer, and Barbara A. Cardone.  We refer to them collectively as "the individual state defendants."

4

Department as a defendant. She alleged that the Department abused its authority by selling the cottage for less than fair market value.

[¶7] The Department answered and asserted the affirmative defense of sovereign immunity in both the action initiated by Perry and the separate action initiated by Vose. The court (*Horton, J.*) appropriately consolidated the two cases for the purposes of discovery.

[¶8] On May 15, 2015, the Department and the individual state defendants moved for summary judgment on all claims asserted against them in the two cases. On December 3, 2015, the court entered a summary judgment in favor of the Department and the individual state defendants on all of Perry's claims against them and most of Vose's claims, but denied the Department's motions for summary judgment on Vose's claims for breach of fiduciary in both cases.[3] The court concluded that provisions in Article V of the Maine Probate Code, *see, e.g.*, 18-A M.R.S. §§ 5-417, 5-429(b), 5-601, 5-607, 5-611 (2016), expressly waived sovereign immunity and that the Department was therefore subject to suit in tort when acting as a public conservator. The court reasoned that by imposing certain duties and liabilities on conservators

---

[3] In the action initiated by Vose, the court denied the Department's motion for summary judgment on her "abuse of authority" claim "to the extent" that she asserted a claim for breach of fiduciary duty.

and requiring the Department to post a surety bond, the Legislature must have intended to waive immunity if the Department breached those duties.

[¶9] The Department appealed and Perry and Vose cross-appealed. We consolidated the appeals and dismissed the cross-appeals filed by Perry and Vose as interlocutory,[4] leaving for decision only the Department's appeal from the court's denial of its summary judgment motions asserting sovereign immunity in both cases.

## II. DISCUSSION

[¶10] Although an appeal from the denial of a defendant's motion for summary judgment is generally interlocutory, the Department's assertion of sovereign immunity is reviewable pursuant to the death knell exception to the final judgment rule. *See Morgan v. Kooistra*, 2008 ME 26, ¶ 18, 941 A.2d 447.

[¶11] The discrete issue presented here is whether the Department is immune from tort claims when acting as a public conservator, or, as the court held, the Maine Probate Code waives immunity. We review de novo the denial of a summary judgment motion asserting immunity. *See Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 9, 997 A.2d 84.

---

[4] The court's order and entry of a summary judgment disposed of only those claims against the Department and the individual state defendants. A number of claims remain pending before the court in the two cases, including but not limited to Perry's claims against Dean and Vose's claims against the purchaser of the Owls Head property.

6

## A.    Maine Tort Claims Act Immunity

[¶12]   The Maine Tort Claims Act (MTCA) provides, "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103 (2016).   In enacting Section 8103, the Legislature unambiguously granted the State immunity from tort suits, unless expressly waived by statute.  *See New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673 ("[I]mmunity is the rule and exceptions to immunity are to be strictly construed."); *Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978) ("In the absence of specific authority conferred by an enactment of the Legislature, therefore, the sovereign's immunity from suit cannot be waived . . . .").

[¶13]  The MTCA expressly waives immunity for particular tort actions, including negligent operation of vehicles, negligent building and road construction and maintenance, and negligent discharge of pollutants. *See* 14 M.R.S. § 8104-A (2016).  The Act also waives immunity "to the limits of the insurance coverage" when the State purchases liability insurance. 14 M.R.S. § 8116 (2016).

[¶14]  We have declared that "a waiver of governmental immunity is not to be implied."  *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 419

(Me. 1987); *see also Knowlton v. Attorney Gen.*, 2009 ME 79, ¶ 12, 976 A.2d 973

("Waivers are not generally implied, and even explicit waivers are construed

narrowly.").[5]  Where a statute generally authorizes suits against parties that

could include government entities, this authorization, without more, is

insufficient to constitute a waiver of sovereign immunity; the statute must

further expressly waive immunity.  *See Hinkley v. Penobscot Valley Hosp.*,

2002 ME 70, ¶¶ 6, 9-10, 15, 794 A.2d 643; *Young*, 535 A.2d at 418 (holding

that a statute providing that a government entity may "sue or be sued" was

insufficient to constitute an express waiver); *see also Nelson v. Me. Tpk. Auth.*,

157 Me. 174, 179, 170 A.2d 687, 690 (1961).

B.      The Maine Probate Code and Conservatorships

[¶15]   The issue here is whether the Maine Probate Code waives

sovereign immunity when the Department acts as a public conservator.  We

begin with a summary of the relevant Code provisions.

[¶16]  The Department "shall act as the public guardian or conservator

for incapacitated persons in need of protective services."   18-A M.R.S.

---

[5]  Whether "a general statute allowing the State to enter into contracts implies a waiver of sovereign immunity by the Legislature when the State is sued for breach of that contract," *Knowlton v. Attorney Gen.*, 2009 ME 79, ¶ 13, 976 A.2d 973 (quotation marks omitted), is not an issue here because there is no contract between the parties and a claim for breach of fiduciary duty is a tort claim.  *See Estate of Hiller*, 2014 ME 2, ¶ 18, 86 A.3d 9; *Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 8, 974 A.2d 286.

§ 5-601(b) (2016).  The same standards and obligations apply to public conservators as to conservators.[6]  *See* 18-A M.R.S. § 5-601(c) (2016) ("Except as otherwise provided in this Part, the appointment, termination, rights and duties, and other provisions for guardians and conservators in this Article shall apply to public guardians and conservators."); 18-A M.R.S. § 5-607 ("A public guardian or conservator has the same powers, rights and duties respecting his ward or the protected person as provided for guardians and conservators by the other parts of this Article . . . .").

[¶17]  One such duty requires that each conservator "act as a fiduciary" and "observe the standards of care applicable to trustees as described by Title 18-B, sections 802 to 807 and chapter 9."  18-A M.R.S. § 5-417.  Conservators may, in certain circumstances, be held "individually liable for obligations" in managing the protected person's property and for torts committed in administering the estate.  *See* 18-A M.R.S. § 5-429(b).  The public conservator is required to "give a surety bond for the joint benefit of the wards or protected persons placed under the responsibility of the . . . [State], with a surety company or companies authorized to do business within the State, in

---

[6]  The fact that the conservatorship was temporary is not material to the issue presented in this appeal.  *See* 18-A M.R.S. § 5-408(f) (2016) ("A temporary conservator has all the powers of a permanent conservator provided in this code . . . .").

an amount not less than the total value of all assets held by the public guardian or conservator." 18-A M.R.S. § 5-611.

C.      Whether the Probate Code Expressly Waives Immunity

[¶18]  The trial court held that, read together, the above provisions of the Probate Code constitute an express waiver of immunity.  The court reasoned that because public conservators had the same duties and obligations as conservators, 18-A M.R.S. §§ 5-601(c), 5-607, conservators could be held liable for their conduct in managing property, 18-A M.R.S. § 5-429(b), and, because the State was required to provide a surety bond in the amount of assets held, 18-A M.R.S. § 5-611, the Legislature must have intended that the Department be held liable for a breach of those duties.  The court acknowledged that the Probate Code contains no "explicit statement that sovereign immunity is waived" but concluded that the bond requirement in 18-A M.R.S. § 5-611 "would be utterly meaningless" if the protected person had "no recourse against the bond" when the Department breached duties imposed by 18-A M.R.S. § 5-417.

[¶19]  In *Hinkley v. Penobscot Valley Hospital*, we considered whether language in the Maine Health Security Act (MHSA) permitting "*any* action for damages for injury or death against *any* health care provider" constituted an

express waiver of sovereign immunity.[7]   2002 ME 70, ¶ 9, 794 A.2d 643. Because the MHSA did not explicitly reference the MTCA and did not specifically waive immunity as to medical malpractice claims, we concluded that there was no express waiver.  *Id.* ¶¶ 9-10.  We reiterated that "a waiver of governmental immunity is not to be implied" and an express waiver must be explicitly stated in the statute.  *Id.* ¶ 10 (quotation marks omitted).

[¶20]   Even if the express language of the Probate Code provisions, when read together, supports an inference that immunity is waived, this would amount to an implied—not express—waiver.  *Compare Implied Waiver*, Black's Law Dictionary (10th ed. 2014) (defining "implied waiver" as conduct "reasonably *inferring* the intent to waive" (emphasis added)), *with Express*, Black's Law Dictionary (defining "express" as "[c]learly and unmistakably communicated" as opposed to "implied"); *see also Conn v. Bd. of Comm'rs*, 51 N.E. 1062, 1064 (Ind. 1898) ("The implication or inference which may arise in the construction of statutes is of something not expressly declared, but arises out of that which is directly or expressly declared in the statute.").

[¶21]   Combining various provisions of the Probate Code to reach the inference that the Legislature waived immunity, as the trial court did,

---

[7]   There was no dispute in that case that the defendant, Penobscot Valley Hospital, was a governmental entity.  *See Hinkley v. Penobscot Valley Hosp.*, 2002 ME 70, ¶ 2, 794 A.2d 643.

contravenes the clear statutory language granting the State immunity "[e]xcept as otherwise *expressly* provided by statute," 14 M.R.S. § 8103(1) (emphasis added), and our precedents rejecting implied statutory waivers. *See Hinkley*, 2002 ME 70, ¶ 10, 794 A.2d 643; *Young*, 535 A.2d at 419. Thus, although the Probate Code imposes a fiduciary duty on conservators and provides that they may be held liable for a breach, 18-A M.R.S. § 5-429(b), without a separate, express provision waiving immunity to bring those claims against the State, immunity endures. *See Hinkley*, 2002 ME 70, ¶¶ 10, 12, 794 A.2d 643 ("[W]e have never held that an individual could bring suit against a government entity under a statute that provides for a specific cause of action without first determining that the statute expressly waived governmental immunity.").

[¶22] Because there is no express waiver in the Probate Code, the Department is immune.

D. Waiver Pursuant to 14 M.R.S. § 8116

[¶23] We next consider whether the Department waived sovereign immunity by obtaining liability insurance. *See* 14 M.R.S. § 8116 (providing that immunity is waived where the State obtains liability insurance, "but only to the limits of the insurance coverage").

[¶24]   The Department asserted the affirmative defense of sovereign immunity and thus had the burden of proof on this issue, including the burden to establish that there is no insurance coverage.  *See King v. Town of Monmouth*, 1997 ME 151, ¶ 7, 697 A.2d 837.  The Department met this burden.  The Department asserted, in a properly supported statement of material fact, that the State did not purchase liability insurance that would cover the claims against the Department and that the State's self-insurance excludes coverage for claims for which the State is immune.  Although Vose denied this statement, she failed to properly controvert the State's assertion because her denial was unsupported by a citation to competent contrary evidence in the record.  *See* M.R. Civ. P. 56(h)(4).[8]

E.      The Surety Bond

[¶25]   Lastly, we decline to reach whether sovereign immunity bars recovery against the surety bond filed with the Probate Court pursuant to 18-A M.R.S. § 5-611.[9]  To reach a bond, the Probate Code contemplates a

---

[8] The court relied in part on 14 M.R.S. § 8116 to conclude that immunity was waived "at least to the extent of the [Department] surety bond," which was not part of the summary judgment record, and declined to decide whether the bond was insurance until it was made part of the record.  Vose, however, does not urge this reasoning on appeal, arguing that "the bonds of the public and private conservators serve the same purpose: surety.  Neither is liability insurance."  Vose instead relies entirely on the argument that the Probate Code expressly waived sovereign immunity.

[9] As noted, the bond the Department obtained pursuant to 18-A M.R.S. § 5-611 (2016) was not part of the summary judgment record and has not been included in the record on appeal.  By

separate action, filed in either the Probate Court or the Superior Court, on the bond against the surety. *See* 18-A M.R.S. § 8-309 (2016). An action on the bond would thus proceed against the surety company providing the bond pursuant to 18-A M.R.S. § 5-611, rather than against the principal, the Department. *See* 18-A M.R.S. §§ 5-611, 8-309; Mitchell & Hunt, *Maine Probate Procedure: Guide to Official and Recommended Forms* § 13.14.2 at 13-64 (2012) (describing the procedure by which an interested party may bring a suit against the bond, naming the surety when the bonded fiduciary has misbehaved); *Estate of Jennings v. Cumming*, 2013 ME 103, ¶¶ 13-14, 82 A.3d 132 (discussing the Superior Court's concurrent jurisdiction to adjudicate claims of conservator misconduct and against the sureties of probate bonds); *see also* Restatement (Third) of Suretyship & Guaranty § 1 cmt. d (Am. Law. Inst. 1996).

[¶26] Because the claims for breach of fiduciary duty were brought directly against the Department rather than against the bond, this appeal

---

statute, the Department is not required to file bonds in individual guardianships or conservatorships, but must give a surety bond "for the joint benefit of the wards or protected persons placed" in public guardianships or conservatorships in the amount of the total value of all assets held by the public guardian or conservator. 18-A M.R.S. § 5-611. The total value is calculated at the end of the State's fiscal year. *Id.* According to the Department, the value of Dean's assets was not included in any bond because the temporary public conservatorship expired before the end of the fiscal year. The Department represented at oral argument that notwithstanding this fact, the bond for the benefit of all wards and protected persons in public conservatorship would still cover Dean's property.

presents no occasion to reach the issue; we therefore express no opinion regarding sovereign immunity in an action brought against the bond pursuant to 18-A M.R.S. § 8-309. Further discussion would be purely advisory. *See Wilcox v. City of Portland*, 2009 ME 53, ¶ 12, 970 A.2d 295 ("We do not issue . . . advisory opinions.").

## III. CONCLUSION

[¶27] We conclude that because the Probate Code does not expressly refer to the MTCA or expressly provide that the State may be sued and held liable for a breach of fiduciary duty when acting as public conservator, *see Hinkley*, 2002 ME 70, ¶¶ 9-10, 794 A.2d 643, and because, on this record, there is no evidence that the Department obtained liability insurance coverage that waived immunity pursuant to 14 M.R.S. § 8116, the Department is immune from the breach of fiduciary duty claims asserted in these cases. We therefore vacate the order denying the Department's motions for summary judgment and remand with instructions to grant the motions.

The entry is:

> Order denying the Department's motions for summary judgment vacated. Remanded for the entry of a summary judgment in favor of the Department in both cases on the basis of sovereign immunity.

---

Janet T. Mills, Attorney General, and Christopher C. Taub, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant Department of Health and Human Services

David F. Jenny, Esq. (orally), Owls Head, for cross-appellant Pamela W. Vose

Cynthia A. Dill, Esq. (orally), Troubh Heisler, Portland, for cross-appellant Claire Dean Perry

Business and Consumer Docket docket numbers CV-2013-48 and CV-2014-14
FOR CLERK REFERENCE ONLY